.because I did not think it necessary. I sold beef-cattle for him, and received the money; spent some in his support; don't remember that any consideration was paid for the land when the deed was made. He lived on the land, cultivated and used it; never made support; got no rent.

J. L. SWEAT, by brief, for plaintiff in error.

S. W. HITCH, by HARRISON & PEEPLES, *contra.*

OLMSTEAD *v.* WILLIAMS.

The action being for a malicious prosecution and arrest, and the plea of justification not being sustained by the evidence, and the verdict of the jury not being so excessive in amount as to indicate any bias or prejudice, and there being no complaint of any error of law committed by the court on the trial, the grant of a new trial was unwarranted by law. The plea of justification was necessarily false, for, as shown by the evidence, the acts of the plaintiff on which the charge of criminal trespass was made against him by the defendant did not constitute any violation of the penal laws of the State, and therefore did not subject him to indictment or arrest.        *Judgment reversed.*

March 26, 1892. Argued at the last term.

Malicious prosecution. Justification. New trial. Before Judge ATKINSON. Ware superior court. April term, 1891.

Olmstead sued Williams for malicious arrest and prosecution. The defendant pleaded justification. Plaintiff obtained a verdict for $250. Defendant moved for a new trial upon the grounds that the verdict was contrary to law, evidence, etc. A new trial was granted, and the plaintiff excepted.

The evidence discloses that at the time of the arrest the plaintiff, under the direction of his superior, was engaged in the erection of a fence which the defendant claims was on his property. The plaintiff claims that it was on the property of the railroad company for which

he was working at the time. The evidence for defendant was to this effect : The property was owned by him. He had built a storehouse on it in 1871, and it had been used as a store by himself and tenants up to the time it was burned, sometime in May, 1889. The arrest was in May, 1889. Defendant found plaintiff and others on the ground where the store was burned, putting up the fence. He told them that was his property and they knew it, and for them to get off of it ; they paid no attention to what he said, and he took out the warrants for trespass and placed them in the hands of the sheriff who executed them. He held the property under a deed executed December 10, 1860, the property lying immediately southeast of the then Atlantic & Gulf railroad and being 315 acres of lot 166 in the 8th district of Ware county ; had exercised ownership over the land ever since 1860, etc. One Garret was occupying a shanty on part of the land where the storehouse was built and attending to a tank for the Brunswick & Albany road, now the B. & W. R. R. Defendant tore down this house and told Garret to move in another which was unoccupied, the house which he occupied until recently torn down by order of the Brunswick & Western railroad. Gave Garret permission to take in a small piece of ground for a garden around the house, and charged him no rent. Defendant had two other tenement houses between his store and where Garret was living, at the time they were torn down recently by the B. & W. R. R. Co. There were some posts standing between where they were erecting the fence and the railroad, which were part of the paling enclosing the store lot. The railroad was built when defendant tore down the house Garret was living in, and built his store. He believed he had the right to have the arrest made, and did so in good faith. Has not presented any of the parties to the grand jury nor had them indicted, and the grand jury

v 89-10

has been in session twice since they were arrested. He was not acquainted personally with any of the parties; inquired their names to get out the warrant, and did not consult a lawyer or anybody about taking it out. He thought they were violating the law; was not mad but did not feel in the best of humor. In evidence for plaintiff was a deed made September 11, 1860, by one Stansell to the Brunswick & Florida Railroad Company, conveying a right of way 100 feet wide on each side of the track, and three acres of land in addition to the right of way, one acre and a half on the north side and one and a half on the south side of the track, through and of lot of land 166 in the 8th district of Ware county. As to this deed Stansell testified that he signed it, but never owned any of the lot on the southeast of the S. F. & W., formerly Atlantic & Gulf railroad, at the time he made the deed, but owned that on the west side. There was further evidence for the plaintiff as follows: Under his superior he and others were digging holes and putting in posts; there were no palings between where they were erecting the fence, and the railroad; he did not know whose it was; he was putting up the fence in good faith; defendant came and told them to get off his property, that they knew it was his property, and was surveying his land around, and said he would have them arrested and make an example of them; they kept on building the fence; there was a big crowd out there; the sheriff arrested them, and plaintiff had a good deal of feeling when he was arrested; felt badly shaken up about it; they were building fence on the burnt lot, and plaintiff did not know what the fencing was for. The fence was being erected within one hundred feet of the center of the track of the B. & W. R. R. There was a fence back of Garret's house, but at the time of the arrest plaintiff's superior had not commenced to build the fence in there. Garret's house was between the line

where they intended constructing the fence, and the railroad. The store was burned before they started the fence. Before the arrest plaintiff was told by this superior that they were fencing in the right of way of the railroad and working within the line of the right of way, 100 feet from the center track, and he asked defendant if that was not the line where it was, when defendant answered that he did not know and did not care. The railroad was built and in operation before the war. Garret was living in a house built by the railroad company long time ago ; was tending the tank a long time for the railroad. When defendant was going to build his store he tore down the house Garret was living in, which was on the lot where the store was burned, and told him to move in the house he continued living in until 1889, and that he could take in a garden around the house. The railroad company built this house when the railroad was built through, and tore it down not long ago. Garret has either been in the service of the railroad · company or taken care of by them ever since before the war, and has lived in their houses paying no rent, and defendant never tried to collect any rent from him or to molest him in way. The railroad house he moved out of and the one he moved into when defendant built his store, were on the same strip of land, within about the same distance of the railroad, the one he last lived in being fifty or seventy-five yards below the first.

GOODYEAR & KAY and J. L. SWEAT, by brief, for plaintiff

G. J. HOLTON & SON and J. S. WILLIAMS, by H. B. TOMPKINS, for defendant.

---

## CHAVOS v. THE STATE.

There was no error in the charge of the court, and the verdict was warranted by the evidence. *Judgment affirmed.*

March 26, 1892. Argued at the last term.